UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                             :

UNITED STATES OF AMERICA,              :

            v.                                        :         S4 11-CR-205 (AKH)

NICOLÁS MADURO MOROS, *et al.*      :

                  Defendants.     :
------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF**
**NICOLÁS MADURO MOROS TO DISMISS THE INDICTMENT**
**DUE TO INTERFERENCE BY THE UNITED STATES GOVERNMENT WITH**
**HIS SIXTH AMENDMENT AND DUE PROCESS RIGHTS**
<u>**OR, IN THE ALTERNATIVE, LEAVE FOR RETAINED COUNSEL TO WITHDRAW**</u>

## **TABLE OF CONTENTS**

BACKGROUND ..................................................................................................................2

ARGUMENT ......................................................................................................................7

    I.      The United States Government is interfering with Mr. Maduro's constitutional rights................................................................................................7

    II.     The appropriate remedy for the constitutional violations is dismissal ..................11

    III.    In the alternative, if dismissal is not granted, undersigned counsel seeks leave to withdraw .................................................................................................................12

CONCLUSION..................................................................................................................13

i

# TABLE OF AUTHORITIES

**Cases**

*Luis v. United States*,
   578 U.S. 5 (2016) ......................................................................................................... 8

*S.E.C. v. FTC Cap. Markets, Inc.*,
   No. 09-CV-4755, 2010 WL2652405 (S.D.N.Y. June 30, 2010) ................................. 9

*United States v. Bin Laden*,
   132 F. Supp. 2d 168 (S.D.N.Y. 2001) ......................................................................... 7

*United States v. Bonventre*,
   No. 10-CR-228, 2011 WL1197853 (S.D.N.Y. Mar. 30, 2011) ................................... 9

*United States v. Gonzalez–Lopez*,
   548 U.S. 140 (2006) ................................................................................................ 8, 10

*United States v. Inman*,
   483 F.2d 738 (4th Cir. 1973) ....................................................................................... 9

*United States v. Orman*,
   417 F. Supp. 1126 (D. Colo. 1976) ........................................................................... 12

*United States v. Ortiz,*
   No. 24-CR-302 (N.D. Ca. Nov. 12, 2025) ................................................................ 11

*United States v. Stein*,
   435 F. Supp. 2d 330 (S.D.N.Y. 2006) ................................................................... 9, 10

*United States v. Stein,*
   495 F. Supp. 2d 390 (S.D.N.Y. 2007) ................................................................. 10, 11

*United States v. Stein*,
   541 F.3d 130 (2d Cir. 2008) ........................................................................ 8, 9, 11, 12

*Wong Wing v. United States*,
   163 U.S. 228 (1869) ..................................................................................................... 7

**Statutes, Regulations, and Other Authorities**

Executive Order 13692 ........................................................................................................ 3

Executive Order 13884 ........................................................................................................ 3

ii

Executive Order 13949 ..................................................................................................................3

Fed. R. Crim. P. 12(b).....................................................................................................................1

U.S. Const. Amend. VI..................................................................................................................8

The government of the United States, having abducted President Maduro from Venezuela to bring him before this Court to stand trial in the United States, is now preventing the government of Venezuela from funding Mr. Maduro's defense. The government of Venezuela under its laws has the obligation to pay Mr. Maduro's defense costs. The United States government, through the Department of Treasury Office of Foreign Assets Control (OFAC), initially granted a license to Mr. Maduro's counsel of choice to accept funds from the government of Venezuela to represent Mr. Maduro. Unilaterally and without explanation, however, OFAC subsequently amended the license such that it now precludes the receipt of defense costs from the government of Venezuela. As a result, Mr. Maduro, who lacks his own funds to retain counsel, is being deprived of his constitutional right to counsel of his choice. OFAC's interference with Mr. Maduro's right to counsel and his due process right to present a defense is particularly unjustifiable since OFAC has recently repeatedly granted licenses for U.S. persons to engage with the government of Venezuela in myriad commercial transactions—none of which implicate the fundamental constitutional rights at issue here.

If OFAC's interference with Mr. Maduro's ability to fund his defense persists, undersigned counsel cannot remain in the case, nor can Mr. Maduro be represented by any other retained counsel. Not only would the Court need to appoint counsel and foist the cost of Mr. Maduro's defense on the United States taxpayers, despite the willingness and obligation of the government of Venezuela to pay Mr. Maduros defense costs, but also any verdict against Mr. Maduro would be constitutionally suspect. Accordingly, Mr. Maduro moves pursuant Rule 12(b) of the Federal Rules of Criminal Procedure to the dismiss the Fourth Superseding Indictment against him due to

the interference by the United States government with his Sixth Amendment right to counsel and with his right to present a defense, as guaranteed by the Due Process Clause.[1]

## BACKGROUND

On January 3, 2026, the United States invaded the Bolivarian Republic of Venezuela with special forces and air assets—killing, by some estimates, over 100 people. *See*, *e.g.*, https://www.bbc.com/news/articles/cz9v3n7110zo ("The Venezuelan government says more than 100 people were killed in the country during the US raid on its capital, Caracas, on 3 January."). The United States physically seized the President and the First Lady of Venezuela, both of whom were injured during their abduction, and forcibly took them to the United States. Images of Mr. Maduro restrained and deprived of sight and sound during his seizure have been released by the United States government and spread across the globe. Mr. Maduro is now being held in isolation at the Metropolitan Detention Center in Brooklyn pending trial on charges that relate to alleged conduct that occurred while he was the head of state of a sovereign nation.

Under the laws and practices of Venezuela, Venezuela has an obligation to pay its President's legal fees and Mr. Maduro has a legitimate expectation that those fees will be paid by Venezuela. *See* Decl. of Henry Rodríguez Facchinetti, attached as Exhibit A ("Facchinetti Decl.") ¶¶ 4-6. The government of Venezuela stands ready to meet its obligation to pay the costs of Mr.

---

[1] This motion does not address Mr. Maduro's immunity defenses, or any other defenses, and is not intended to waive such defenses. Rather, it addresses only the threshold issue of the interreference with his rights to counsel and due process, which must be resolved so that he can fairly assert his myriad legal and factual defenses. Counsel for Mr. Maduro has conferred with counsel for the government. The parties have agreed to a briefing schedule, absent alteration by the Court, under which the government will file its opposition to this motion no later than March 13, 2026 and Mr. Maduro will file a reply no later than March 20, 2026, which will result in the motion being fully briefed in advance of the status conference currently scheduled for March 26, 2026. Undersigned counsel understands that the government will oppose dismissal but will take no position on the alternative relief sought, leave for undersigned counsel to withdraw.

Maduro's defense. *See id.* ¶ 7. Mr. Maduro, on the other hand, cannot afford to pay for his own defense. *See* Decl. of Nicolás Maduro Moros, attached as Exhibit B ¶ 4.

Both Mr. Maduro and the government of Venezuela are sanctioned by the United States government. *See, e.g.,* Executive Order 13884 (Blocking Property of the Government of Venezuela); Executive Order 13692 (Blocking Property and Suspending Entry of Certain Persons Contributing to the Situation in Venezuela); Executive Order 13949 (Blocking Property of Certain Persons With Respect to the Conventional Arms Activities of Iran). As a result, counsel cannot provide a legal defense to Mr. Maduro or receive funds from the government of Venezuela to do so without first obtaining a specific license from OFAC. Prior to Mr. Maduro's initial appearance in court on January 5, 2026, undersigned counsel wrote to the Court noting the need for undersigned counsel to obtain a license. Given OFAC's history of granting licenses to defense counsel in pending criminal cases, undersigned counsel anticipated that the license would be granted. Nonetheless, undersigned counsel apprised the Court: "If, contrary to expectations, the license is not promptly granted, it may affect my ability to continue the representation."

At Mr. Maduro's arraignment the same day, the Court, cognizant of the need for a license for counsel so that Mr. Maduro would be able to retain legal services, said to the prosecutors: "I have a letter from Mr. Pollack—and I think this may apply as well to Mr. Donnelly and Mr. Sanchez—about various procedures that need to be taken with regard to fees. I ask the U.S. Attorney's Office to work with defense counsel to assure that counsel can represent their clients zealously and fully." Counsel for the government responded: "Understood, your Honor. We discussed it with defense counsel and will let you know if there are any issues." *See* Jan. 5, 2026 Tr. 14:12-20.

3

Undersigned counsel, as well as counsel for Cilia Adela Flores de Maduro, Mr. Maduro's wife and the First Lady of Venezuela, each applied to OFAC for the appropriate licenses on January 7, 2026. The applications specifically sought authorization to receive funds from the government of Venezuela for purposes of representing Mr. Maduro and Ms. Flores. At 3:18 p.m. and 3:36 p.m. on Friday, January 9, 2026, OFAC issued the licenses related to Mr. Maduro and Ms. Flores, respectively. *See* Decl. of Barry J. Pollack, attached as Exhibit C ("Pollack Decl.") ¶¶ 3-4. Each license ("the Original License") tracked the application and explicitly permitted the legal defense to be funded by the government of Venezuela.

Less than three hours later, at 6:05 p.m., OFAC *sua sponte* issued an amended license for Mr. Maduro, and only for Mr. Maduro ("the Amended License"). *See* Pollack Decl. ¶ 5. Under the Amended License, undersigned counsel is not permitted to receive funds from the government of Venezuela to indemnify or advance legal fees for Mr. Maduro's defense. Thus, OFAC, after apparently completing its review of the applications on the merits and determining both licenses should issue, at 6:05 p.m. on a Friday either: itself reversed course without any explanation on one of the two nearly identical applications; or was ordered to do so by senior officials of the Executive Branch.

Since issuing the Amended License, OFAC has continued to prevent counsel from providing a fair defense to the President. All the offense conduct alleged against Mr. Maduro allegedly occurred in Venezuela. Relevant witnesses and documents are in Venezuela. No meaningful factual investigation can occur without travel to Venezuela and discussions with officials of the Venezuelan government. On January 23, 2026, OFAC was asked for guidance as to whether undersigned counsel could accept payment from an unsanctioned individual or entity to travel to Venezuela to meet with representatives of the government of Venezuela to begin the

4

process of investigating the case. Despite the urgent nature of this request, OFAC has, as of the date of this filing, not responded.

OFAC's treatment of the needs of Mr. Maduro's defense stands in stark contrast to OFAC's historical practice, its action on the license for Ms. Flores, and its actions related to myriad other licenses pertaining to Venezuela since its issuance of the Amended License:

- OFAC has historically promptly granted licenses to allow defense counsel in pending criminal cases to receive funds from sanctioned defendants, both under the Venezuela sanctions regime and under sanctions regimes pertaining to other countries; further, in a range of circumstances, licenses have also been issued to permit a sanctioned third party to fund the defense of a sanctioned individual. *See* Decl. of Timothy O'Toole, attached as Exhibit D ("O'Toole Decl.") ¶ 10.

- Indeed, as an experienced OFAC practitioner has attested in a sworn declaration in support of this motion:

    > From my personal experience, I am familiar with cases where a sanctioned employer wished to pay for the representation of a sanctioned employee in U.S. proceedings and sought authorization from OFAC to do so. Although such payment would not be allowed under the terms of the relevant general licenses in the Federal Register, OFAC has, in my experience and observation, granted such license applications upon request and supporting materials. In fact, until now, I was not aware of any case in which OFAC has denied authorization in circumstances where a sanctioned employer expressed a willingness to pay the U.S. legal fees of a sanctioned employee or officer and sought a specific license to do so. *Id.*

- As noted above, OFAC's treatment of the license pertaining to Mr. Maduro is inconsistent with its treatment of the license pertaining to Ms. Flores. Even though both are charged in the same case, filed nearly identical applications, and counsel were initially granted licenses authorizing them to accept funds from the

5

government of Venezuela for the defense of their client in this case, OFAC issued the Amended License only for Mr. Maduro.

- Since issuing the Amended License for Mr. Maduro, OFAC has repeatedly issued licenses for U.S. persons to engage with the government of Venezuela in commercial transactions where the refusal to issue the license does not have the constitutional import it does here. These include: OFAC General License 30B, authorizing certain transactions related to port and airport operations; General License 46A, authorizing certain activities involving Venezuelan-origin oil; General License 47, authorizing the sale of U.S. origin diluents to Venezuela; General License 48, authorizing the supply of certain goods, technology, software, or services for the exploration, development or production of oil or gas in Venezuela; General License 49, authorizing negotiations of and entry into contingent contracts for certain investment in Venezuela; and General License 50, authorizing transactions related to oil or gas sector operations in Venezuela of certain entities.

On February 11, 2026, OFAC was asked, particularly in light of the myriad licenses it has issued related to Venezuela since issuing the Amended License, to reinstate the Original License pertaining to defense costs for Mr. Maduro. Counsel explained the violation of Mr. Maduro's constitutional rights resulting from the failure to reinstate the Original License. Accordingly, OFAC was asked to act on the request immediately, but, at the latest, by February 18, 2026—providing OFAC considerably more time than it needed to grant the Original Licenses pertaining to Mr. Maduro and Ms. Flores and then *sua sponte* to amend the Original License pertaining to Mr. Maduro.

6

Just two days later, on February 13, 2026, OFAC issued two additional licenses permitting *commercial* transactions with the government of Venezuela: General License 49, authorizing negotiations of and entry into contingent contracts for certain investments in Venezuela; and General License 50, authorizing transactions related to the oil and gas sector operations in Venezuela of certain entities. While it acknowledged the February 11 request to reinstate the Original License related to Mr. Maduro's legal defense by February 18, OFAC provided no response by that date and has failed to act on the request to allow undersigned counsel to accept funds to represent Mr. Maduro to defend this case. *See*, Letter from Barry J. Pollack to the Court, dated February 20, 2026 (ECF No. 288).

## ARGUMENT

**I.     The United States Government is interfering with Mr. Maduro's constitutional rights.**

After invading another country and forcibly bringing its sovereign head of state to the United States, the government of the United States is now actively preventing him from retaining counsel of his choice and receiving a fair defense in this Court, in violation of his Sixth Amendment and Due Process rights. Mr. Maduro, like all defendants brought before the courts of the United States, has a right to a fair trial, including the protections of the Sixth Amendment's right to counsel and the Due Process Clause. *See United States v. Bin Laden*, 132 F. Supp. 2d 168, 184 n.11 (S.D.N.Y. 2001) (even in a case involving a defendant charged with being an al-Qaeda terrorist, the defendant was provided with these rights) (citing *Wong Wing v. United States*, 163 U.S. 228 (1869) ("all persons within the territory of the United States are entitled to the protection guaranteed by the Fifth and Sixth Amendments.")) (cleaned up). Without question, Mr. Maduro is entitled to the same protections.

7

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "Given the necessarily close working relationship between lawyer and client, the need for confidence, and the critical importance of trust" the Supreme Court has held that the Sixth Amendment encompasses a defendant's "a fair opportunity to secure counsel of his own choice." *See Luis v. United States*, 578 U.S. 5, 11 (2016).

In *Luis*, the Supreme Court found that the government unlawfully interfered with a defendant's right to counsel by depriving her of access to her untainted assets so that she could hire the lawyer of her choice and fund her legal defense. *See id.* at 8-9. The majority opinion rejected the dissent's suggestion that defendants can simply receive a defense funded by the American taxpayers (*see id*. at 21-22), holding that the Sixth Amendment protects the right to counsel of choice (assuming basic conditions applicable here, *i.e.*, counsel must be a member of the bar and be free from conflicts). *See id.* at 11-12, 19 (citing *Gonzalez–Lopez*, 548 U.S. 140, 148 (2006)) ("Deprivation of the right to counsel of the defendant's choice is complete when the defendant is erroneously prevented from being represented by the lawyer he wants[.]") (internal quotation marks omitted).[2]

The Second Circuit has held that the Sixth Amendment is also violated when the government interferes with payment of a criminal defendant's fees by a third-party. *See United States v. Stein*, 541 F.3d 130, 155-56 (2008) ("[I]f the Sixth Amendment prohibits the government from interfering with such arrangements, then surely it also prohibits the government from

---

[2] *Luis* noted that tainted property subject to forfeiture could be restrained because title to that property had already passed to the government and, therefore, the defendant had no right to its use. *See id*. at 13-14. The government of Venezuela, on the other hand, will pay Mr. Maduro's legal fees from sources unrelated to charges in the Fourth Superseding Indictment and which are also, in all other respects "untainted." *See* Facchinetti Decl., Ex. A ¶ 7.

interfering with financial donations by others, such as family members and neighbors—and employers.") (citing *United States v. Inman*, 483 F.2d 738, 739–40 (4th Cir. 1973) (per curiam) ("The Sixth Amendment right to counsel includes not only an indigent's right to have the government appoint an attorney to represent him, but also the right of any accused, if he can provide counsel for himself by his own resources or through the aid of his family or friends, to be represented by an attorney of his own choosing.")).

Mr. Maduro, as Venezuela's head of state, has both a right and an expectation to have legal fees associated with these charges funded by the government of Venezuela. *See* Facchinetti Decl., Ex. A ¶¶ 4-6. This right and expectation of payment is among the protected property interests with which the United States government may not interfere without intruding on the defendant's constitutional rights. *See United States v. Stein*, 435 F. Supp. 2d 330, 367 (S.D.N.Y. 2006) ("*Stein I*") ("both the expectation and any benefits that would have flowed from that expectation—the legal fees at issue now—were, in every material sense, [the defendant's] property, not that of a third party"); *see S.E.C. v. FTC Cap. Markets, Inc.*, No. 09-CV-4755, 2010 WL2652405, at *6, 10 (S.D.N.Y. June 30, 2010) (finding a company's promise to advance an employee's criminal defense costs is sufficient to create a property right and ordering the release of frozen funds); *United States v. Bonventre*, No. 10-CR-228, 2011 WL1197853, at *4 (S.D.N.Y. Mar. 30, 2011) ("[A] defendant has a property interest in funds consensually given to him by their rightful owner [.]"). The interference by the United States government with Mr. Maduro's legitimate expectation that the government of Venezuela will pay his defense costs violates the Sixth Amendment.

Having found the government's Sixth Amendment violation required dismissal, the Second Circuit in *Stein* did not reach the additional due process violation. *See Stein,* 541 F.3d at 135-36. The district court, however, had found, in addition to finding violations of the right to counsel, a

9

due process violation when the government used its considerable power to obstruct a defendant's fair trial by preventing a third party from funding the defense with untainted funds. *See Stein I*, 435 F. Supp. 2d at 357 ("[T]he government may not both prosecute a defendant and then seek to influence the manner in which he or she defends the case . . . ."); *see also United States v. Stein*, 495 F. Supp. 2d 390, 427 (S.D.N.Y. 2007) ("*Stein II*") (The government "deliberately or callously prevented many of these defendants from obtaining funds for their defense that they lawfully would have had absent the government's interference. They thereby foreclosed these defendants from presenting the defenses they wished to present and, in some cases, even deprived them of counsel of their choice.").

The Court need not find prejudice to Mr. Maduro to conclude that his constitutional rights have been violated. *See Gonzalez–Lopez*, 548 U.S. at 148 (The wrongful deprivation of the right to counsel is a structural error that so affects "the framework within which a trial proceeds" that courts may not even ask whether the error harmed the defendant.). But OFAC's amendment of the Original License is already impacting this case and prejudicing Mr. Maduro. The allegations are alleged to have occurred outside the United States in different countries over the course of twenty-five years. On January 23, 2026, counsel requested permission from OFAC for an unsanctioned party to pay the expenses for undersigned counsel to travel to Venezuela to meet with representatives of the government of Venezuela for the purpose of investigating the allegations. OFAC has ignored that request, effectively preventing counsel from preparing the defense.

Further, the prejudice resulting from the interference with Mr. Maduro's rights will only increase the longer the case is pending. It is anticipated that there will be voluminous discovery and there are indisputably many complex legal defenses to address. The interference by the United States government with the payment of fees by the government of Venezuela and costs associated

10

with activities necessary to the defense will impede Mr. Maduro from having a full and fair defense against the charges.

## II. The appropriate remedy for the constitutional violations is dismissal.

The appropriate remedy in this Circuit for unlawful government interference with the right to choice of counsel that cannot be cured is to restore the defendant to the *status quo ante* by dismissal of the indictment. See *Stein*, 541 F.3d at 146 ("If there was a Sixth Amendment violation, dismissal of the indictment is required."). The same remedy is mandated for the due process violation. See *Stein II,* 495 F. Supp. 2d at 427.

Indeed, the conduct of the United States government in this case is far more egregious than that in *Stein*, where the Department of Justice and the prosecutors offered incentives and applied pressure to cause an employer to cap legal fees or decline payment. Here, the United States government is outright forbidding payment by revoking OFAC's Original License and three hours later, for no articulated reason, replacing it with an Amended License that prohibits payment by the government of Venezuela. The impropriety of the *sua sponte* issuance of the Amended License, and OFAC's unwillingness to reinstate the Original License, is illustrated by contrasting these actions with OFAC's longstanding practices with respect to funds for the defense of a pending criminal case, its grant of the Original License to Ms. Flores without amendment, and with the numerous licenses granted by OFAC with respect to Venezuela relating to commercial transactions, the preclusion of which would not have the constitutional ramifications at play here.

The fact that it is another agency of the Executive Branch, rather than the prosecutorial team, that is interfering with Mr. Maduro's rights does not somehow excuse the violation. See *FTC Cap. Markets, Inc.*, 2010 WL2652405 (SEC's asset freeze violated defendant's Sixth Amendment rights in a parallel criminal proceeding); *United States v. Ortiz,* No. 24-CR-302 (N.D. Ca. Nov.

11

12, 2025) (ECF No. 30) (dismissing the indictment when counsel could not prepare for trial due to Congress's failure to provide Criminal Justice Act funds); *United States v. Orman*, 417 F. Supp. 1126 (D. Colo. 1976) (dismissing the indictment due to misconduct by the Drug Enforcement Administration that was unknown to the prosecutors).

The sanction of dismissal of the indictment is justified to eliminate prejudice to a defendant in a criminal prosecution when the violation is not cured. *See Stein*, 541 F.3d at 136. The government's interference with the right of Mr. Maduro to his choice of counsel and his due process rights cannot be cured since OFAC, an Executive Branch agency, appears unwilling—or because it has been instructed not to do so, unable—to issue the necessary license to allow payment by the Venezuelan government of fees and expenses necessary to the defense. Where, as here, the violation cannot be rectified and the defendant cannot be "as much as possible restore[d]" "to the circumstances that would have existed had there been no constitutional error," the Second Circuit has held that dismissal is the appropriate remedy. *See id.* at 146 (finding where violation could not be remedied, dismissal was required).

Accordingly, as the United States government has violated Mr. Maduro's Sixth Amendment rights and Due Process protections and has refused to revisit its position, Mr. Maduro's motion to dismiss the Fourth Superseding Indictment against him should be granted.

**III.    In the alternative, if dismissal is not granted, undersigned counsel seeks leave to withdraw.**

Should the Court, despite the interference of the United States with Mr. Maduro's right of counsel of choice and due process rights, deny Mr. Maduro's motion to dismiss, in the alternative, undersigned counsel reluctantly asks the Court for leave to withdraw. As noted was possible when undersigned counsel first entered his appearance, undersigned counsel cannot continue in the case now that OFAC has acted inconsistently with its longstanding practice in criminal cases and with

12

its actions in this case pertaining to Ms. Flores. The alternative relief of leave for retained counsel to withdraw (and providing Mr. Maduro the opportunity to seek court-appointed counsel) neither prejudices the government nor impairs judicial economy, as no discovery has yet been produced and no deadlines for motions practice have been set.

## CONCLUSION

The conduct of the United States government not only undermines Mr. Maduro's rights but also this Court's mandate to provide a fair trial to all defendants who come before it in accordance with the protections afforded by the U.S. Constitution. The United States government, even while authorizing myriad commercial transactions with Venezuela, is prohibiting counsel from receiving untainted funds from the government of Venezuela, despite Venezuela's obligation to fund Mr. Maduro's defense. Any trial that proceeds under these circumstances will be constitutionally defective and cannot result in a verdict that will withstand later challenge. As OFAC has refused to reconsider its position and will not provide a license that allows the government of Venezuela to fund the defense and is thereby interfering with Mr. Maduro right to retain counsel of his choice, President Maduro respectfully moves this Court to dismiss the Fourth Superseding Indictment against him.

Dated: February 26, 2026               Respectfully submitted,

                                        /s/ Barry J. Pollack
                                       Barry J. Pollack
                                       HARRIS ST. LAURENT & WECHSLER LLP
                                       1775 Pennsylvania Avenue, N.W., Suite 650
                                       Washington, D.C. 20005
                                       (202) 617-5971
                                       bpollack@hs-law.com

## CERTIFICATE OF SERVICE

    I hereby certify that on this 26th day of February 2026, I filed the foregoing pleading through the ECF system, which shall then send an electronic copy of this pleading to all parties in this action.

                                                                          */s/ Barry J. Pollack*
                                                                              Barry J. Pollack