**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

v.

NICOLÁS MADURO MOROS, *et al.*,

Defendants.

S5 11-CR-205 (AT)

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION OF NICOLÁS MADURO MOROS AND CILIA FLORES DE MADURO**
**TO DISMISS COUNT TWO OF THE FIFTH SUPERSEDING INDICTMENT**
**FOR LACK OF VENUE OR, IN THE ALTERNATIVE,**
**FOR PRODUCTION OF THE GRAND JURY MINUTES**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

I. COUNT TWO OF THE FIFTH SUPERSEDING INDICTMENT SHOULD BE DISMISSED FOR IMPROPER VENUE. ........ 1

II. THIS COURT SHOULD ORDER PRODUCTION OF THE GRAND JURY MINUTES. ........ 8

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*United States v. Alexander*,
No. 24-CR-676 (VEC), 2025 WL 3154981 (S.D.N.Y. Nov. 11, 2025) ..................................... 7

*United States v. Archer*,
486 F.2d 670 (2d Cir. 1973) ..................................... 6

*United States v. Catino*,
735 F.2d 718 (2d Cir. 1984) ..................................... 2, 4, 6, 7

*United States v. Cessa*,
856 F.3d 370 (5th Cir. 2017) ..................................... 8

*United States v. Ghanem*,
993 F.3d 1113 (9th Cir. 2021) ..................................... 1, 6, 7

*United States v. Hilger*,
867 F.2d 566 (9th Cir. 1989) ..................................... 5

*United States v. Hong Vo*,
978 F. Supp. 2d 49 (D.D.C. 2013) ..................................... 3, 4, 6, 7

*United States v. Moten*,
582 F.2d 654 (2d Cir. 1978) ..................................... 9

*United States v. Myers*,
692 F.2d 823 (2d Cir. 1982) ..................................... 6

*United States v. Provoo*,
215 F.2d 531 (2d Cir. 1954) ..................................... 4, 6

*United States v. Rivera*,
388 F.2d 545 (2d Cir. 1968) ..................................... 6

*United States v. Sampson*,
898 F.3d 270 (2d Cir. 2018) ..................................... 4

**Statutes**

18 U.S.C. § 2340A ..................................... 2

18 U.S.C. § 3238 ..................................... passim

**Rules**

Fed. R. Crim. P. 6 ........ 9

Fed. R. Crim. P. 7 ........ 9

**Other Authorities**

Justice Manual, Title 9, Section 11.121 ........ 8

U.S. Const. art. III ........ 6

Mr. Maduro and Ms. Flores de Maduro, by and through their undersigned counsel, submit this Memorandum of Law in support of their Motion to Dismiss Count Two of the Fifth Superseding Indictment (the "S5") for Lack of Venue or, in the alternative, for production of the grand jury minutes associated with the government's presentation of evidence relating to the S5.

## I. COUNT TWO OF THE FIFTH SUPERSEDING INDICTMENT SHOULD BE DISMISSED FOR IMPROPER VENUE.

The venue allegation in Count Two of the S5 reflects a naked attempt at forum shopping. Indeed, it is the product of a carefully coordinated bit of theater by the government—enlisting both the grand jury and this Court—with the sole aim of improperly "manipulat[ing] venue" to the government's forum of choice. *United States v. Ghanem*, 993 F.3d 1113, 1127, 1130, 1133 (9th Cir. 2021) (vacating conviction for insufficient evidence of venue under Section 3238 in part because of the government's "deliberate attempts to manipulate venue" to its forum of choice). Accordingly, Count Two of the S5 should be dismissed for improper venue under Rule 12(b)(3)(A)(i) of the Federal Rules of Criminal Procedure.[1]

For crimes committed abroad, venue "shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought." 18 U.S.C. § 3238. Venue for Count Two therefore lies in the Eastern District of New York, which is where both Mr. Maduro

[1] Mr. Maduro and Ms. Flores de Maduro have filed herewith motions to dismiss the Fifth Superseding Indictment based on sovereign immunity. The Court should dismiss the case on that basis and need not reach this Motion. If, however, the Court fails to dismiss based on sovereign immunity, the Court should dismiss Count Two for the alternative reasons set forth in this Motion. As discussed below, there is currently ample basis to support this Motion; we are therefore filing it by the first motions deadline in an abundance of caution. Note, however, that we anticipate that additional facts to be adduced in discovery will provide further support for dismissal for lack of venue and reserve the right to renew or supplement this Motion based on that information. Accordingly, we do not object to the Court resolving the sovereign immunity motion first and temporarily reserving decision on this Motion until the second round of pretrial motions have been filed.

and his co-defendant, Ms. Flores de Maduro, were "restrained of [their] liberty" at MDC Brooklyn when the grand jury returned the S5 and when they were first charged with the offense alleged in Count Two. *United States v. Catino*, 735 F.2d 718, 724 (2d Cir. 1984) (cleaned up).

The grand jury returned the S5 on October 6, 2026. The S5 includes the same charges against Mr. Maduro as the Fourth Superseding Indictment (the "S4"), except that it adds factual allegations, adds Ms. Flores de Maduro to offenses previously charging only Mr. Maduro, and alleges an entirely new Count Two against both Mr. Maduro and Ms. Flores de Maduro: conspiracy to commit torture in violation of 18 U.S.C. § 2340A. ECF 342 ¶¶ 43-45. Each count alleges that venue is proper in the Southern District of New York under either the "arrested" or "first brought" prong of Section 3238. ECF 342 ¶¶ 41, 44, 47, 53, 55. But neither allegation can be correct: on October 6, 2026, both Mr. Maduro and Ms. Flores de Maduro were detained in the Eastern District of New York awaiting trial under the S4. With respect to Count Two, they had not been "arrested" in or "first brought" to the Southern District of New York.

On October 6, 2026, Mr. Maduro and Ms. Flores de Maduro could not have been "arrested" in or "first brought" to the Southern District of New York because they were detained at MDC Brooklyn. 18 U.S.C. § 3238. It is therefore unclear how the grand jury, if properly instructed, could have made a probable cause finding as to venue. Either the government presented insufficient evidence on venue to the grand jury, or it instructed the grand jury that the government *anticipated* arresting Mr. Maduro and Ms. Flores de Maduro in the Southern District of New York in connection with the S5, without disclosing or instructing on the legal significance of the historical fact that Mr. Maduro and Ms. Flores de Maduro were already detained in the Eastern District of New York. Neither scenario would allow the grand jury to make a finding that venue is proper in the Southern District of New York. The reason the government proceeded in this fashion is

obvious: the grand jury could not, properly instructed, find venue in the Southern District of New York, and the government wanted to manufacture venue there.

To manufacture venue for Count Two, following the return of the S5, the prosecution orchestrated a series of events that served no law enforcement purpose other than to buttress the S5's deficient venue allegations. On October 8, 2026, Ms. Flores de Maduro was transported in custody from MDC Brooklyn to the Southern District of New York for a bond hearing. While she was in the courthouse, the S5 was unsealed at the government's request, and the government effected a gratuitous "arrest" of the already detained Ms. Flores de Maduro on the S5. The following week, on October 15, 2026, Mr. Maduro and Ms. Flores de Maduro were both transported from MDC Brooklyn to the Southern District of New York courthouse for arraignment on the S5. While Mr. Maduro was in the courthouse, the government effected a similarly gratuitous "arrest" of Mr. Maduro on the S5. Neither "arrest" served any obvious law enforcement function. The government did not need to bring either Mr. Maduro or Ms. Flores de Maduro into custody—they were already detained. And the scheduled arraignment on the S5 could proceed with or without a separate arrest. The only reason for these "arrests," which were strategically timed for appearances of Mr. Maduro and Ms. Flores de Maduro in the Southern District of New York courthouse, was to manufacture a basis for venue under the S5.

The venue allegation for Count Two of the S5 is deficient as a matter of law. The operative facts here are straightforward—indeed they are largely a matter of public record—and the only real dispute here pertains to those facts' "legal significance under section 3238." *United States v. Hong Vo*, 978 F. Supp. 2d 49, 58 (D.D.C. 2013) (dismissing charges before trial for lack of venue under Section 3238). Because this Court need not make any findings about "the sufficiency of the government's evidence" on the elements of any offense and need only consider the *legal*

*significance* of undisputed facts regarding the procedural history of this case, the issue is ripe for resolution now. *United States v. Sampson*, 898 F.3d 270, 278 (2d Cir. 2018).

Venue for Count Two of the S5 lies in the Eastern District of New York. Both Mr. Maduro and Ms. Flores de Maduro were detained at MDC Brooklyn when the grand jury returned the S5. Under the "arrest" prong of Section 3238, the Eastern District of New York is where Mr. Maduro and Ms. Flores de Maduro were "first restrained of [their] liberty *in connection with the offense*[s] *charged*" in the S5. *Catino*, 735 F.2d at 724 (cleaned up). The law is clear that the "arrest" prong of Section 3238 is functional: it follows the objective reality of detention. This Court need not prioritize form over substance in determining when and where a defendant is first "restrained of his liberty" under Section 3238. *Id.* (cleaned up).[2]

In *United States v. Provoo*, 215 F.2d 531 (2d Cir. 1954), the Second Circuit held that the defendant was first arrested in Maryland (under a predecessor statute to Section 3238) because Maryland was where the defendant was first "restrain[ed] . . . for the purpose of bringing him to New York for trial," even before any charge was filed in New York—let alone before an arrest warrant could be executed in connection with that charge. *Id.* at 538. *Provoo* therefore "stands for the proposition that venue under section 3238 may be proper in a district based on restraint there even before a charge is filed in a different district." *Hong Vo*, 978 F. Supp. 2d at 64. Under *Provoo*, this Court need not "blind [its] eyes" to the reality that Mr. Maduro and Ms. Flores de Maduro were detained in connection with the S5 at MDC Brooklyn when it was returned on October 6,

---

[2] The "first brought" prong, by contrast, "applies only in situations where the offender is returned to the United States already in custody." *Id.* (citations omitted). Both Mr. Maduro and Ms. Flores de Maduro were of course already in the United States when the grand jury returned the S5. Thus, unlike when they were first brought to the United States, allegedly into the Southern District of New York, at a time that there was, until they were first brought, no District in which there was venue, with respect to Count Two of the S5, there was already venue in another district: the Eastern District of New York.

2026, well before the government opportunistically served them with arrest warrants in the Southern District of New York courthouse. 215 F.2d at 538.

The Ninth Circuit is in accord. In *United States v. Hilger*, 867 F.2d 566 (9th Cir. 1989), the court rejected that a defendant was "arrested" in the Northern District of California under Section 3238 when the defendant was forced to "appear[] there in compliance with a summons issued after the indictment was filed." *Id.* at 567-68. The defendant "had no choice but to come to the Northern District to answer the summons." *Id.* at 568. The compulsion constituting the defendant's "arrest" under Section 3238 therefore occurred *before* his arrival in the Northern District of California, even though the government arrested him again when he arrived in the district. *Id.* Mr. Maduro and Ms. Flores de Maduro likewise "had no choice but to come" to the Southern District of New York for their court appearances. *Id.* The actual compulsion constituting their arrest plainly occurred earlier, while they were detained in MDC Brooklyn.

The upshot is clear: the purported execution of an arrest warrant on both Mr. Maduro and Ms. Maduro de Flores in the Southern District of New York—a manufactured formality that served no law enforcement purpose—is not determinative. The government cannot opportunistically create venue in any district of its choosing under Section 3238 simply by purporting to execute an otherwise unnecessary arrest warrant there. Under *Catino*, *Provoo*, and *Hilger*, this Court should prioritize the objective reality of the detention of Mr. Maduro and Ms. Flores de Maduro at MDC Brooklyn, not the theater orchestrated by the government in the Southern District of New York courthouse.

A contrary holding would be an open invitation to forum shopping. Courts have uniformly rejected interpretations of Section 3238 that would give the government such unbounded discretion to "select any federal district in the United States as the place for trial" for crimes committed

abroad. *Provoo*, 215 F.2d at 538. The government cannot "simply . . . tak[e] an in-custody defendant to the district of its choice and obtain[] a new indictment there" to establish venue under Section 3238. *Ghanem*, 993 F.3d at 1127. "[S]uch a rule would give the government unchecked power to select venue." *Id.* Such a rule is also "inconsistent with the purpose of section 3238, which 'is not to fix the place of arrest but simply to have the place of trial conform to the place of arrest.'" *Hong Vo*, 978 F. Supp. 2d at 62 (quoting *Catino*, 735 F.2d at 724). Here, that is plainly the Eastern District of New York.

The government's conduct here is also in tension with decades of settled law. The Constitution "gives Congress primacy in selecting venue for crimes committed overseas," not the government. *Ghanem*, 993 F.3d at 1127 (citing U.S. Const. art. III, § 2, cl. 3). Venue requirements are imposed precisely to "prevent the government from choosing a favorable tribunal or one which may be unduly inconvenient for the defendant." *United States v. Rivera*, 388 F.2d 545, 548 (2d Cir. 1968). That is why the government cannot manufacture venue by "lur[ing] a defendant to a distant district for some minor event simply to establish venue," *United States v. Myers*, 692 F.2d 823, 847 n.21 (2d Cir. 1982), or by inducing a defendant into making an interstate call, *United States v. Archer*, 486 F.2d 670, 677-78, 683-86 (2d Cir. 1973).

The same holds true for Section 3238. The government cannot "manipulate venue" under Section 3238 by using its custodial power over Mr. Maduro and Ms. Flores de Maduro opportunistically to arrest them in its venue of choice. *Ghanem*, 993 F.3d at 1130. It is "no response that § 3238 already gives the government considerable discretion in picking venue." *Id.* at 1127.

The government "must take [Section 3238] as it finds it, not whittle away its provisions by a construction based on formalism rather than substance." *Id.* at 1128 (cleaned up).[3]

For the reasons set forth above, Count Two, which alleges an offense for the first time when Mr. Maduro and Ms. Flores de Maduro were already in the United States and detained in the Eastern District of New York, must be dismissed. *See*, *e.g.*, *Hong Vo*, 978 F. Supp. 2d at 65 (dismissing some but not all charges in a single indictment for lack of venue under Section 3238). No defendant in this case—Mr. Maduro or Ms. Flores de Maduro are the only defendants in the S5—could have been "arrested" or "first brought" prior to October 6, 2026 to the Southern District of New York "in connection with" Count Two. *Catino*, 735 F.2d at 724 (cleaned up). Count Two did not exist in any form, in any previous indictment in this case, before that date. The only possible basis for a finding of venue on Count Two is the government's subsequent manufactured "arrests" of Mr. Maduro and Ms. Flores de Maduro in the Southern District of New York courthouse. And for all the reasons outlined above, that transparent attempt at forum shopping cannot establish venue.

[3] The potential for forum shopping is among the reasons why this Court should decline to follow *United States v. Alexander*, No. 24 CR. 676 (VEC), 2025 WL 3154981 (S.D.N.Y. Nov. 11, 2025). In *Alexander*, the court accepted that a courthouse arrest could establish venue under Section 3238, but nevertheless acknowledged that "the process pursued by the Government here could be so outrageous in different fact patterns that it should not be permitted," citing *Archer* and *Myers*. *Id.* at *13. The court, however, ignored that very concern, relying on the government's discretion regarding "the location of the defendant's arrest." *Id.* But that discretion is not unlimited. It is bounded by, among other things, constitutional venue protections, the primacy of Congress "in selecting venue for crimes committed overseas," and by "practical and logistical concerns." *Ghanem*, 993 F.3d at 1127. Accepting the government's position here—that, in the absence of any practical or logical reason for not arresting Mr. Maduro and Ms. Flores de Maduro in the district in which they were already in custody, it can establish venue in any forum of its choosing by instead staging an unnecessary arrest in a different district—would bypass those safeguards and would "give the government unchecked power to select venue," *id.*, with no basis for concluding that Congress intended such a result when enacting Section 3238.

Accordingly, Count Two should never have been presented to a grand jury in the Southern District of New York. *See* Justice Manual, Title 9, Section 11.121 ("A case should not be presented to a grand jury in a district unless venue for the offense lies in that district."). When the grand jury returned Count Two, there was no factual basis for the grand jury to find probable cause to believe there was venue in the Southern District of New York. Count Two should be dismissed. *United States v. Cessa*, 856 F.3d 370, 372 (5th Cir. 2017) ("As a practical matter if nothing more," the Fifth Amendment, Sixth Amendment, and Art. III § 2, cl. 3 "mean that a grand jury should return an indictment only in a district where venue lies. Otherwise, the resulting indictment can be dismissed for lack of trial venue." (citation omitted)).

## II. THIS COURT SHOULD ORDER PRODUCTION OF THE GRAND JURY MINUTES.

At a minimum, Mr. Maduro and Ms. Flores de Maduro are entitled to production of the grand jury minutes associated with the government's presentation of evidence relating to the S5. First, as discussed above, the venue allegations with respect to Count Two are deficient—indeed impossible—on their face. On October 6, 2026, when the S5 was returned and the charge in Count Two brought for the first time, Mr. Maduro and Ms. Flores de Maduro were detained in MDC Brooklyn. As a result, they could not have been "arrested" in or "first brought" to the Southern District of New York on that charge. 18 U.S.C. § 3238. The government's evidentiary presentation to the grand jury therefore must have been deficient: either the proof itself was inadequate, or the government relied on a theory premised on its anticipated future actions, ignoring matters of historical fact, and omitted informing the grand jury of the historical fact or failed to instruct on the significance of that fact.

This Court may direct the disclosure of information regarding grand jury proceedings either "preliminarily to or in connection with a judicial proceeding" or "at the request of a defendant who

shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(i)-(ii). Mr. Maduro and Ms. Flores de Maduro have shown the requisite "particularized need" for disclosure. *United States v. Moten*, 582 F.2d 654, 662 (2d Cir. 1978) (cleaned up). The S5's venue allegation regarding Count Two is impossible on its face: the government appears to have enlisted the grand jury to create venue *prospectively*—based only on the government's promises regarding its future actions in disregard of historical facts. Disclosure of the minutes, or at a minimum, *in camera* review of the minutes by this Court, is needed to correct the government's abuse of the grand jury process and to resolve this Motion to Dismiss. Disclosure will also help to ensure preservation of the Fifth Amendment grand jury rights of Mr. Maduro and Ms. Flores de Maduro, and will explain how the indicting grand jury understood its role and obligations. Furthermore, this request is premised on undisputed facts about the procedural history of this case—which are largely a matter of public record—and is narrowly tailored to those grand jury minutes associated with the government's presentation of venue evidence. This request therefore "outweighs the need for secrecy." *Id.* (cleaned up).

The government's evidentiary presentation to the grand jury may have been deficient in another critical respect. The S5 includes a curious footnote: "[t]he allegations contained in the Fourth Superseding Indictment are realleged an incorporated by reference as though fully set forth herein." ECF 342 ¶ 4 n.1. Nothing in the Federal Rules of Criminal Procedure permits the incorporation of a prior indictment in this way. Rule 7 provides that an indictment "may incorporate by reference an allegation made in another count" of the *same indictment*, but says nothing about incorporating, in bulk, *every single allegation in a prior indictment* without even listing those allegations. Fed. R. Crim. P. 7(c)(1).

In short, the government cannot simply "incorporate by reference" the S4's allegations without making an independent evidentiary showing to the grand jury about those allegations. Production of the minutes, or at a minimum *in camera* review of those minutes, would determine whether the government presented evidence to the grand jury related to the factual allegations made in the S4. Without doing so, the grand jury that returned the S5 would have had no basis to incorporate the allegations in the S5 into the S4. Production of the grand jury minutes is therefore necessary to bring to light what the government did here.[4]

* * *

For the foregoing reasons, the Court should dismiss Count Two of the S5 for lack of venue, or in the alternative order the production of the grand jury minutes associated with the government's presentation of evidence relating to the S5.

---

[4] The defense has asked the government whether the grand jury that returned the S5 is the same one that returned the S4 previously, and therefore previously heard the evidence supporting S4. The government refused to provide that information.

Dated: November 9, 2026

Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack
HARRIS TRZASKOMA LLP
1300 19th Street, NW, Suite 700
Washington, D.C. 20036
(934) 667-3824
bpollack@harristrz.com

Anna Estevao
HARRIS TRZASKOMA LLP
125 Broad Street, 10th Floor
New York, NY 10004
(212) 970-6465
aestevao@harristrz.com

*Counsel for Nicolás Maduro Moros*

*/s/ M. Andrés Sánchez-Ross*
M. Andrés Sánchez-Ross
Mark E. Donnelly
PARKER, SÁNCHEZ & DONNELLY PLLC
700 Louisiana Street, Suite 4520
Houston, Texas 77002
(713) 659-7200
andres@psd.law

*Counsel for Cilia Adela Flores de Maduro*